FRUGÉ, Judge ad hoc.
The plaintiffs who are operators under mineral leases of a certain oil-producing unit invoked the present concursus proceeding. Plaintiff holds certain mineral leases covering the mineral rights in controversy from each of the defendants herein. A lease was granted by the defendant, Lester R. Harrison, on July 9, 1954, and thereafter a lease was granted by the defendant Beauregard Parish School Board on August 9, 1955.
The plaintiff alleges in his petition that the owner of the disputed minerals is entitled to participation in the production from such unit in a given percentage and cites both adverse claimants, the defendants herein, to assert their rights to the minerals and to the production royalties accruing from the plaintiff’s operation which are deposited into the registry of the district court until the determination of the issue.
The defendant-appellee, Beauregard Parish School Board, and the defendant-appellant, Lester R. Harrison, both claim the minerals to the property in controversy through a common source of title down to the point where the Beauregard Parish School Board having acquired title to the 4.90 acre tract of land in question in 1919. The Beauregard Parish School Board conveyed the property in fee simple absolute without reservation or restriction by deed dated October 27, 1926, to one H. C. Craft. Under this chain of title the defendant Harrison is presently claiming fee title and *508 all the minerals therein. It is the contention of the Beauregard Parish School Board, on the other hand, that by virtue of the provisions of Section 2 of Article IV of the Constitution of 1921, LSA, and regardless of the unqualified conveyance by the terms of the deed, that the mineral rights in such property were reserved to the School Board by operation of law.
The defendant-appellant Harrison contends that the provision of the Constitution has no application to a sale by a School Board of lands owned by it but no longer used for school purposes and that by the deed from the School Board aforesaid, full title to the land and the minerals thereunder was conveyed. Alternatively, Harrison urges that if the reservation of the foregoing constitutional provision did apply to the sale by the School Board, he has acquired a complete title to both lands and minerals by the prescription of ten and thirty years acquirandi causa, and in second alternative, that if the minerals in said tract of land were reserved to the School Board by operation of the aforementioned constitutional provision, such reservation created a mineral servitude under the Louisiana law which has expired by virtue of the prescription resulting from non-user thereof for a period of more than ten years.
Judgment was rendered by the trial court in favor of the appellee Beauregard Parish School Board, recognizing it to be the owner of the mineral rights in contest, from which judgment appellant has prosecuted this appeal.
The title to the land involved in this suit is 4.90 acres located in Section 24, Township 6 South, Range 11 West, Louisiana Meridian, Beauregard Parish, Louisiana and descended by mesne conveyances, and in an uninterrupted chain, from the United States to Davis Brothers Security Company, who, on April 30, 1919, sold it to Beauregard Parish School Board, one of the defendants. The School Board by deed dated October 27, 1926, conveyed the property to one PI. C. Craft, and thereafter, by mesne conveyances, the title descended to Lester R. Harrison, under a deed from one Grady W. Grimes, dated February 5, 1944. In none of the deeds, either the one from the Beauregard Parish School Board, or any of the others, are the minerals excepted or otherwise mentioned. According to the School Board’s resolution, authorizing the sale, a copy of which was attached to a copy of the deed, the sale was made because the property had been abandoned for school purposes.
Continuously from the date of acquisition of the property by H. C. Craft in October 1926, until the present time, the appellant Harrison, or his predecessors in title before him, have been in continuous, actual, physical, corporeal and peaceful and good faith possession of the property as owners thereof under regular instruments of title. There was no drilling for or production of oil, gas or other minerals thereon, nor on any unit in which this property was incorporated prior to the creation of the unit under which the present production is had which unit occurred on May 16, 1956.
It is conceded that the appellant Harrison is the owner of the fee title to the property except the mineral rights, they being the only property right in dispute.
The pertinent portion of Section 2, of Article IV of the Louisiana Constitution of 1921 reads as follows:
“In all cases the mineral rights on any and all property sold by the State shall be reserved * * * ”
It is the contention of the defendant, Beauregard Parish School Board, that the word “State”, as used in the above quoted provision of our Louisiana Constitution, includes a Parish School Board and that the prohibition against alienating mineral rights applies to land sold by a Parish School Board.
The word “State” in its broadest meaning is a body politic or political community of men united under one sovereign gov *509 ernment for mutual advantage. See Black’s . Law Dictionary, Third Edition, page 1652. In this broadest political science concept of the term there is encompassed, among many other things, the existence and function of all subordinate agencies, political subdivisions and parochial bodies which are component parts of the administrative function of the overall sovereign body politic.
On the other hand the word State in its more practical, everyday and commonly accepted sense is understood to be a separate entity from those lesser political corporations and governmental subdivisions such as parishes, municipalities, and school districts.
While the meaning in pure political theory of the word “State” is that it is all inclusive of all subordinate local governments and functions, the practical and commonly accepted concept of the word State is the State government proper, functioning on the overall State level as distinct and distinguished from the local governmental political subdivisions such as the parish police jury, the parish school board or the city government functioning on the restricted local level. The distinction is just as clear in the mind of the average citizen as the distinction between a State highway and a parish road, although both are interlaced and perform the same basic function.
The rule of construction in such instances is stated in 11 Am.Jur., Constitutional Law, Section 65, at page 680 as follows:
“Even though the language may seem to be clear in its meaning, many questions arise where a word which would otherwise be unambiguous has two or more separate and distinct meanings or connotations. In such a situation a question of constructions exists, for it must be determined which of the possible meanings of the term is intended. Words or terms used in a Constitution, being dependent on ratification by the people voting upon it, must be understood in the sense most obvious to the common understanding at the time of its adoption, although a different rule might be applied in interpreting statutes and acts of legislature. This gives rise to the universally recognized and incontrovertibly established rule of construction that it is presumed that words appearing in a Constitution have been used according to their plain, natural, and usual signification and import.”
To the same effect is the following quotation from the test of 16 C.J.S. Constitutional Law § 19 Pages 85 and 86:
“The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who adopt them, and where the language of a constitution admits a doubt, it is presumed that it was intended to be in accordance with the generally recognized rules and principles of public policy.”
And from the same text at § 20 Page 88> we quote the following:
“Unless an intention to the contrary is indicated, words used in a constitution will generally be interpreted in their natural or popular, as distinguished from a technical, meaning.”
Shortly after the adoption, of our Louisiana Constitution of 1921, the Louisiana Legislature adopted Act 100 of 1922, which granted to school boards, without limitation or restriction, the authority to sell or dispose of old school sites at their discretion. It seems logical that had the Legislature considered the provisions of the Constitution under question applicable to parish school boards it would have provided that such sales should be made with full reservation of all mineral rights in the adoption of Act 100 of 1922.
The construction placed upon a constitutional provision by the Legislature, if the same be ambiguous, is entitled to great *510 weight by the court. 16 C.J.S. Constitutional Law § 33 at Page 111, we find:
In doubtful cases such a construction should, and ordinarily will, be followed, unless it is manifestly erroneous. Reasonable, and, it has even been said, wide latitude should be allowed the legislative department in interpreting a constitutional provision. So, where a state constitutional provision is susceptible of two reasonable constructions, the action of the legislature in adopting one of those constructions is sometime deemed conclusive.” State ex rel. Noe v. Knop, La.App., 190 So. 135 at page 141. Succession of Brower v. State, La.App., 80 So.2d 217 at 220.
It is noted that at least two similar limitations or restrictions upon government are contained in the same Article IV of the Constitution in which the section under •consideration is found. In Section 12 thereof it is provided that the funds, credit and property of “the State, or any political corporation thereof,” shall not be loaned or .•granted to any public or private person or corporation; nor shall the “State nor any political corporation” purchase or subscribe to the capital stock of any corporation ; nor shall “the State, nor any political ■corporation thereof,” assume the liabilities ■of any public or private corporation.
In Section 13 of said Article it is provided that the Legislature shall not have power to release any liability or obligation ■due “to the State, or to any parish or municipal corporation thereof.”
A comparison of the language of Sections 2, 12 and 13 of this Article IV of the Constitution in this particular leaves it crystal clear that where the framers intended that the restriction or limitation should apply to the State only as a separate entity from its political subdivision, the word State alone was used, but where the limitation or restriction was intended to apply to the State and to all political .subdivisions thereof, the intent was so spelled out in terms of “the State, or any political corporation thereof.” It is to be further noted that except where otherwise specifically provided in the Constitution the regulation, restriction and limitation of local governmental authorities is contained in Article XIV titled “Parochial and Municipal Affairs.”
A similar question of constitutional construction was decided by the Louisiana Supreme Court in two early cases. The Supreme Court considered the question whether the constitutional provision imposing a limitation or prohibition upon the “State” would be interpreted to extend to parishes and municipal corporations. In the City of New Orleans v. Graihle, 9 La.Ann. 561, the court had under consideration the question of whether a provision in the Constitution of 1845 prohibiting the “State” from subscribing to the stock of private corporations was also a constitutional inhibition upon the City of New Orleans to subscribe to such stock. It was held that the word “State” as so used didn’t extend to the political subdivision.
The court, in its decision, stated:
“The Article of the Constitution in its tenor, only applies to the State in its corporate capacity, and we do not think we would be authorized to extend it to1 the corporations which the Constitution authorizes the Legislature to create for political or municipal purposes, unless such inhibition is necessarily implied: * * * ”
“As the Constitution speaks of the State, which is a distinct corporate body, and of other corporate political bodies to be created, and the inhibition is applied to the former and not to the latter, it would be the exercise of arbitrary power in us thus to extend this Article of the Constitution, by construction, beyond its letter.”
The opinion in the Graihle case further pointed out that the identical question had previously been decided by the court in Police Jury, to Use of New Orleans, O. & G. *511 W. R. Co. v. Succession of McDonogh, 8 La.Ann. 341. At page 563 of 9 La.Ann. of the opinion in the Graihle case, referring to the McDonogh case the court said :
“On the review of that opinion, we> still adhere to its correctness. In that case, it was held by us:
“1st. That the restriction imposed by Articles 108 and 109 of the Constitution of 1852, upon the aid to be given by the State to corporations for internal improvements, did not limit the aid which the parish and municipal corporations of the State might grant for such purposes.”
In the instant case the District Judge reasoned that the constitutional provision in question applied to the sale of school lands by a parish school board because the public school system of the State must be viewed as one system: a State system in which all agencies, school districts, school boards, properties, funds, and operations forming the component parts and discharging the functions of public education are impressed with a State character. That there is no local identity and therefore that all properties held by any of the agencies or subdivisions are State property in character. As a general theoretical concept this argument may appear logical. But as a factual functional situation it is unsound. The one public educational system is not a legal or corporate entity, it cannot sue or be sued. It cannot hold property nor acquire nor dispose of the same. We are dealing here with the functional operation, the powers, duties, obligations, and restrictions of the legal entities created by law to operate and carry on the many functions which form the one public educational system, such as, on the State level the State Department of Education, the State Board of Education, and on the local level the numerous parish and city school boards. More particularly we are dealing with the interpretation of the meaning of the word “State” as contained in Section 2 of Article IV of the Constitution.
School Boards are corporate political bodies. Article 12, Section 10 of the Constitution requires the Legislature to create parish school boards, which it has done by LSA-R.S. 17:81 et seq.
School boards are by the act made political corporations and agencies of the state in the matter of public schools.
The defendant-appellee, Beauregard Parish Board, contends that certain language in State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830, and in Board of Commissioners of Caddo Levee District v. Pure Oil Company, 167 La. 801, 120 So. 373, supports its position in this matter. We do not believe the cases are either authoritative or applicable to the present situation.
The Grace case was a mandamus proceeding by the Levee Board against the Registrar of State lands to compel execution of a deed from the State to the district of lands which had been granted to it under an act of the Legislature of 1892. After passage of the act which authorized the conveyance and directed the registrar and auditor to execute an instrument of conveyance, no further action was taken for many years. When the District demanded execution of its deed, and upon refusal by the defendant officers, suit followed. The defendants resisted the demands primarily on the ground that in the meantime Article IV, Section 2 of the Constitution had been adopted requiring the State to reserve minerals under all tracts conveyed and therefore they were unable to convey a full title as directed by the 1892 Act. The court held upon existing authority that until the instrument of conveyance was executed by said officers the grant was not complete. The court further held that the constitutional provision referred to did not have retroactive *512 effect nor did it repeal the earlier grant by the Legislature of 1892 of these lands to the Levee Board. Such grant continued in effect and remained open subject to its consummation at any time upon simple demand of the grantee and execution of the instrument of conveyance by the officers designated, which it was stated was a pure ministerial duty. This holding decided and disposed of the issues presented to the court for decision; however, it went on to indulge in certain dictum which defendant-appellee points to as authority. We quote from the opinion as follows [161 La. 1039, 109 So. 831]:
“The Tensas Basin levee district was created and organized by the state as a means of discharging its duty to protect the lands in said district from inundation. The district is a state agency, created and continued in ex-istency by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. The land would, to all practical intents and purposes, still be the property of the State. The district could not sell it without reserving to itself the mineral rights, for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, insofar as the section of the Constitution, cited, is concerned, why the auditor and the register should not execute the conveyance.”
In the case of Board of Commissioners of Caddo Levee District v. Pure Oil Company, supra, the defendant Oil Company sought to recover certain royalties which had been previously paid by it to the Levee District. The lands in question had been certified to the Levee District from the State but later by a consent judgment, the certification was adjudged null and title reverted to the State. It appears in this suit that the Levee District is claiming royalties during the time that the title to the land was standing in its name. The defendant pleaded prescription of three years against the claim for rents or royalties. The court held, citing ample authority, that the three year prescriptive period plead by the defendant did run against the Levee Board even though it was an agency of the State. Thus, again the issue was decided and the opinion should have ended there. The court, however, specifically acknowledging that such was not the issue in the case, undertook certain expressions as to what it might do if the case were otherwise. We quote from the language of the opinion at page 376 of 120 So. as follows:
"If the question presented involved-the loss by prescription of the mineral rights themselves, on land conveyed or certified to a levee district, under the Constitution of 1921, we should most likely hold, in view of the conclusion reached in State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830, that, as the levee district must retain such mineral rights, it could not lose them by prescription, for a state agency cannot lose by prescription that which it must retain, and cannot alienate. Mayor, etc. v. Magnon, 4 Mart. (O.S.) 2, 9; City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 868, 66 So. 237; State v. New Orleans Land Co., 143 La. 858, 867, 79 So. 515. But no such question is presented here, but only the question as to whether the demand of a levee district for certain royalties, under a lease, granted in 1910 on land certified to it by the state in 1901, is prescribed.” (Italics by court.)
We do not believe that the statements contained in these opinions are authority for the proposition that the provision of Section 2, Article IV of the Constitution requiring the State in all sales by *513 it to reserve the mineral rights applies to sales by parish school boards of lands acquired by them and subsequently abandoned as school sites. This particular issue was not presented to the court in these cases or decided by the court. Furthermore, the land in the two cases, supra, originally belonged to the State and were of the character commonly referred to as public land. These lands had been conveyed by the State in one instance by an inchoate title and in the other by an invalid title to an agency of the State for mere purposes of administration and control in carrying out certain functions delegated by the State to the agency. The court in these cases concluded that those particular lands remained State lands. On the contrary, the property under consideration in the case at bar was acquired by purchase by the Beauregard Parish School Board with its own funds for the establishment of a local public school for the inhabitants of a district in the name of, under the control and supervision of the School Board as a separate independent governmental subdivision and corporate entity.
Having found the prohibition contained in Section 2 of Article IV of the Constitution of 1921 does not apply to school boards in cases of this kind. There is no need to discuss the alternative pleas of the defendant-appellant.
Accordingly, for the foregoing reasons, the judgment of the trial court is reversed and it is accordingly adjudged and decreed that there be judgment herein in favor of the defendant Lester R. Harrison, recognizing the said Lester R. Harrison to be the true and lawful owner of all of the minerals and mineral rights in the following described property situated in the Parish of Beauregard, State of Louisiana, to wit:
Four & 90/100 acres, being more particularly described as Acreage Tract Number 35, according to plat of survey of F. Shutts, Civil Engineer, dated June 20, 1914, being a subdivision of part of Section 23, Township 6 South, Range 11 West, Louisiana Meridan, which plat was filed for record on July 27, 1914, in Plat Book No. 1, at page 9, of the records of the Clerk of Court for the Parish of Beauregard, Louisiana; said tract being bounded on the North by a street, South by Oklahoma Avenue, East by Kansas City Southern Railway and West by Acreage Tract 34, all of said survey.
It is further ordered and decreed that all funds heretofore deposited in the Registry of the Court in this cause by Winston L. Stokes and Justiss-Mears Oil Company, Inc. be paid by the Clerk of the Thirtieth Judicial District Court to the defendant, Lester R. Harrison, and that said plaintiff, Winston L. Stokes and Justiss-Mears Oil Company, Inc. be and they are hereby ordered to pay to the defendant, Lester R. Harrison, in accordance with the terms and provisions to the oil, gas and mineral lease granted by the said Lester Harrison to Winston L. Stokes as lessee all future rentals, royalties and other payments or benefits accruing or which may hereafter become due by reason of production of oil, gas or other minerals from the above described land or from the unit of which it is a part.
All costs of these proceedings to be paid out of the funds heretofore deposited in the Registry of the Court.
Reversed.