Dear Dr. Cherry:
You have requested an opinion of the Attorney General regarding the sale of immovable property (i.e., a private residence) which has been donated to Charity Hospital. You state that in a will dated March 21, 1930, Mrs. Eve Christine Butterworth Dibert left fifty (50%) percent of her residuary estate to Charity Hospital ("Charity") as an endowment fund. Mrs. Dibert died on August 26, 1938. A Judgment of Possession was signed on January 27, 1942, sending the residuary legatees into possession of the property left to them by Mrs. Dibert.
Included in Mrs. Dibert's residuary estate was a home at 226 Walnut Street in New Orleans. On October 16, 1942, Charity purchased the remaining fifty percent ownership interest in this property and has held same in full ownership since 1942.
You specifically ask whether the Louisiana Health Care Authority ("Authority") can sell this donated property through a real estate company without following the provisions of R.S. 41:140. You also ask whether the funds derived from this sale can be placed into the Endowment Fund, or must they be deposited in the State General Fund.
In answer to your first question, R.S. 46:703 is the statutory provision which creates the Authority. It provides, in pertinent part, the following:
 "The Louisiana Health Care Authority, hereinafter referred to as the `Authority', is hereby created as political subdivision of the state and shall perform the functions and exercise the powers as specified in this Part or as necessary in the performance of its duties."
As can be seen from the above, the Authority has been designated as a political subdivision of the state. R.S. 41:140 controls the sale of immovable property by state agencies. Thus, in the absence of a specific statutory provision placing the Authority under the purvue of R.S. 41:140, it would appear that said provision is inapplicable thereto.
While the Authority has been designated a political subdivision of this state, it nevertheless is legislatively mandated to use services, systems and programs of the state, as well as adhere to various state laws. R.S. 46:707(B) requires the Authority to utilize the automated financial and accounting system (R.S.39:78), the uniform payroll system (R.S. 39:86), the comprehensive liability, worker's compensation, and fire and extended coverage insurance, and medical malpractice liability laws, the state employees' group benefits insurance program (R.S.42:821, etc.), the state procurement systems for supplies, equipment and services for professional, personal, consulting or social services, the state telecommunications procurement provisions (R.S. 39:1751, etc.), legal services (R.S. 49:257, etc.), the State Open Meetings Law (R.S. 42:4.1, etc.), Public Records Law (R.S. 44:1, etc.) and the Code of Governmental Ethics (R.S. 42:1101, etc.).
We have been unable to locate any legal provision which requires the Authority to comply with R.S. 41:140 in connection with the disposition of the subject residence.
The powers and duties of the Authority are enumerated in R.S.46:707. It provides, in pertinent part, the following:
"§ 707. Powers and duties of the authority.
 A. The authority, acting through the board, shall have the following general powers and duties:
 (1) To hold title to immovable and movable property, to acquire such property through purchase, gift, lease, or otherwise, and to dispose of such property by sale or lease in accordance with the general laws of the state. However, the sale of any immovable property . . . shall be subject to approval by the legislature . . . .
 (2) To seek and accept charitable grants or other gifts to assist in the performance of its functions as defined in this Part and to coordinate fund development at the medical centers." (Emphasis added.)
As can be seen from the above provisions, the Authority is empowered to hold title to, and dispose of by sale, immovable property, such as the residence in question. However, the sale is subject to approval by the legislature. The law further provides that the disposition of the property must be in accordance with the general laws of this state. Further, the Authority's power to sell the residence is subject to any restrictions and/or prohibitions relative thereto, contained in the terms of the bequest.
While the general laws of this state do not specifically address the sale of surplus immovable property by the Authority, this office has consistently held that when a political subdivision sells immovable property which is no longer needed for public purposes, such property should be sold by means of public sale. Attorney General Opinion No. 80-771, in affirming this position, concludes:
 "With respect to the requirements of law for public advertising and bidding, La. R.S. 41:131 and following provides that the sales of public lands owned by the state should take place only after specified advertising and bidding procedures. Specifically, La. R.S. 41:134(C) provides that such property shall be sold to the highest bidder paying the price of the adjudication. We find that these procedures pertain to land held by police juries, as agencies of the state. See Shell Oil Co. v. Board of Commissioners of Pontchartrain Levee District, 336 So.2d 248 (1976). These statutes were enacted in the 1960 Regular Session of the Legislature, subsequent to enactment of La. R.S. 33:4711(1950) and have not been superseded by any subsequent legislation.
 Therefore, a negotiated private sale utilizing a private appraisal would not be legally authorized and compliance by the police jury with the public advertisement and bidding procedures is mandatory."
We find the reasoning set forth in this opinion to be equally applicable to the Authority. In accord is Attorney General Opinion No. 90-458.
In answer to your second question regarding the disposition of the proceeds of the sale, we refer you to Article VII, Section 9
of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
"Section 9. (A) Deposit in State Treasury.
 All money received by the state or by any state board, agency, or commission shall be deposited immediately upon receipt in the state treasury, except that received:
 (1) As a result of grants or donations or other forms of assistance when the terms and conditions thereof or of agreements pertaining thereto require otherwise;"
We have been advised by representatives of the Authority that certain funds, including surplus funds and overcollections, of the Authority are deposited in the state treasury pursuant to Article VII, Section 9 and R.S. 46:706(A)(3)(a). However, where a specific bequest to an endowment fund of immovable property is involved, Article VII, Section 9(A)(1) serves as a specific constitutional exception to this requirement.
As previously noted, R.S. 46:707(A)(2) empowers the Authority to accept charitable grants and other gifts to assist in the performance of its functions. It is our opinion that the Legislature, by vesting the power to accept donations in the Authority, intended that the Authority also be charged with the duty of administering these gifts (i.e., immovable properties and the proceeds of the sales thereof), including the responsibility of administering trust accounts consistent with generally accepted principals of accounting.
Hence, it is our opinion that the proceeds derived from the sale of the Dibert property fall within the exception of Article VII, Section 9(A)(1) of the 1974 Constitution, and that said proceeds need not be deposited in the state treasury, but rather placed in the endowment fund as per the terms of the bequest.
Trusting this answers your inquires, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob[3]/cla
cc: Gary Keyser, Department of Justice, State of Louisiana Glenn Kent, Division of Administration, State of Louisiana Gary Hall, Office of the State Treasurer, State of Louisiana
Dr. William A. Cherry Chief Executive Officer and Medical Director Louisiana Health Care Authority 8550 United Plaza Boulevard — 4th Floor Baton Rouge, Louisiana 70809
DATE RECEIVED:
DATE RELEASED:
Robert E. Harroun, III Assistant Attorney General