336 So.2d 248 (1976)
SHELL OIL COMPANY et al., Plaintiffs-Appellees,
v.
BOARD OF COMMISSIONERS OF PONTCHARTRAIN LEVEE DISTRICT et al., Defendants-Appellants.
No. 10699.
Court of Appeal of Louisiana, First Circuit.
June 30, 1976.
Rehearing Denied August 27, 1976.
Writ Refused November 16, 1976.
*249 Victor A. Sachse, III, Baton Rouge, George C. Schoenberger, Jr., New Orleans, John T. McMahon, Houma, E. Leland Richardson, Baton Rouge, for defendants-appellants.
Jules A. Carville, III, La Place, for plaintiffs-appellees.
Before SARTAIN, ELLIS and EDWARDS, JJ.
SARTAIN, Judge.
At issue in this cause is the ownership of mineral rights in and to certain lands situated in Iberville Parish, Louisiana. The parties claiming exclusive rights thereto are Pontchartrain Levee District (Levee District), through its Board of Commissioners, on the one hand, and Lewis Gottlieb, Rosalie Gottlieb Moise, J. Burton LeBlanc, Jesse E. LeBlanc, and William Hardee LeBlanc, appellants, on the other hand.
Shell Oil Company, and others, (Shell) as mineral lessee of the Levee District and appellants produced minerals thereunder from 1952 through 1965, accumulating as royalties the sum of $48,823.07. Shell deposited this amount in the Registry of the Court and provoked the instant concursus proceeding.
Appellants seek reversal from the judgment of the district court which held that the Levee District was prohibited by Section 2, Article IV, of the Constitution of Louisiana (1921) from divesting itself of the minerals when it conveyed the property without reservation to appellants' ancestor in title.
The Louisiana Constitution of 1921, Section 2, Article IV, in pertinent part, provides:
"* * * In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or reclaim property sold or adjudicated to the state for taxes. * * *"
In his written reasons for judgment, the trial court held that the Levee District is an "arm" of the state and subject to the *250 prohibition contained in the above quoted section of the Constitution.
Appellants argue that the Levee District is a separate and distinct legal entity from the state, with specific powers including the right to sue and be sued, buy or sell real estate, etc., and does not fall within the purview of Section 2, Article IV, above.
For reasons hereinafter stated, we concur in the result reached by the trial judge and affirm.
At the outset, it should be noted that the facts are not in dispute. The record consists entirely of documentary evidence placed therein by stipulation of counsel for both parties. Further, the Levee District does not contest appellants' ownership of the surface rights to the subject property, which is more particularly described as follows, to-wit:
"The East half of the Northeast quarter of Section 7, Township 9 South, Range 2 East, in Iberville, Louisiana."
This property was included in acreage acquired by the State of Louisiana on December 4, 1909, from the United States of America under the provisions of the "Swamp Land Act" approved by Congress on September 28, 1850. 43 U.S.C.A., Section 982, et seq.
The Levee District was created by Act 95 of 1890. This act also transferred the subject property from the state to the Levee District.
Appellants' ancestor in title obtained the property from the Levee District on March 24, 1926. Patent and conveyance executed under the provisions of Act 215 of 1908 dated March 29, 1926, were filed for record on April 17, 1926. Neither appellants' deed of acquisition nor the patent and conveyance contained any reservation of the mineral rights.
We shall primarily center our discussion around four cases, namely: Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830 (1926); Board of Commissioners of Caddo Levee District v. Pure Oil Company, 167 La. 801, 120 So. 373 (1929); Stokes v. Harrison, 238 La. 343, 115 So.2d 373 (1959); and, King v. Board of Commissioners for Atchafalaya Basin Levee District, 148 So.2d 138 (3rd La.App., 1962), writ denied, 244 La. 118, 150 So.2d 585 (1963).
In Grace, the Legislature, by Act 103 of 1892, granted to the Levee District certain lands received from the United States Government. When mandamus was sought in 1926 to require transfer of these lands to the Levee District, the defendant-officials objected on the grounds that Section 2, Article IV, of the Constitution (1921) prohibited the state from alienating the minerals, hence the state could not transfer the property. In affirming the issuance of the requested writ, the court stated:
109 So. 830, 831, 832:
"We think that the auditor and the register are in error when they say that the constitutional provision, cited, repeals, even partially, Act 103 of 1892, in so far as relates to the making of the grant, made in that act, or that it revokes to any extent that grant. The Tensas Basin levee district was created and organized by the state as a means of discharging its duty to protect the lands in said district from inundation. The district is a state agency, created and continued in existence by the state with the foregoing purpose in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies for the purpose of constructing and maintaining levees. The land would, to all practical intents and purposes, still be the property of the state. The district could not sell it without reserving to itself *251 the mineral rights, for the reason that its creator, for whom it holds, could not do so. We see no reason, therefore, in so far as the section of the Constitution, cited, is concerned, why the auditor and the register should not execute the conveyance." (Emphasis ours)
See Lum Chow v. Board of Commissioners for Lafourche Basin Levee District, 203 La. 268, 13 So.2d 857, where the language emphasized in the above quote was cited with approval.
In Caddo, while the issue therein presented did not relate to the subject constitutional prohibition but was concerned solely with the question of prescription under C.C. Art. 3521, the court stated:
"It appears, therefore, from the foregoing, that the plea of prescription presented is one pleaded against an agency of the state, created by the Legislature, to accomplish certain public purposes, devolving primarily upon the state, in bar of a demand for royalties, under a mineral lease, granted by that agency, on land conveyed to it by the state, to aid it in accomplishing those purposes. It also appears that the first question presented is whether prescription runs against an agency of the state on such a demand. If the question presented involved the loss by prescription of the mineral rights themselves, on land conveyed or certified to a levee district, under the Constitution of 1921, we should most likely hold, in view of the conclusion reached in State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830, that, as the levee district must retain such mineral rights, it could not lose them by prescription, for a state agency cannot lose by prescription that which it must retain, and cannot alienate. Mayor v. Magnon, 4 Mart. (O.S.) 2, 9; City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 868, 66 So. 237; State v. New Orleans Land Co., 143 La. 858, 867, 79 So. 515. But no such question is presented here, but only the question as to whether the demand of a levee district for certain royalties, under a lease, granted in 1910 on land certified to it by the state in 1901, is prescribed.
* * * * * *
"Plaintiff has, and always has had, the right to sue and to be sued in its corporate name. It is a separate entity from the state, created by the state, it is true, to accomplish certain public purposes, but is nevertheless distinct from it. We think that the foregoing excerpt from the case last cited is applicable here, and we therefore rule that the prescription pleaded runs against plaintiff."
In Stokes, the contest was between Lester R. Harrison and the Beauregard Parish School Board. The School Board had acquired the property in 1919 and sold it to Harrison's ancestor in title in 1926. Gas in paying quantities was produced by Stokes, who had obtained leases from both the Board and Harrison. When concursus was sought to determine the true owner, the School Board urged that it was still the owner of the minerals because Section 2, Article IV of the Constitution, above, prohibited it from alienating the minerals. Harrison contended that a school board is not the "state" and was not and is not burdened with the prohibition against alienation. The trial court held that the school board was in fact the "state" within the intent of the subject constitutional provision. In reversing, this court stated:
La.App., 109 So.2d 506, 512
"We do not believe that the statements contained in these opinions are authority for the proposition that the provision of Section 2, Article IV of the Constitution requiring the State in all sales by it to reserve the mineral rights applies to sales by parish school boards of lands acquired by them and subsequently abandoned as school sites. This particular issue was not presented to the court in these cases or decided by the court. *252 Furthermore, the land in the two cases, supra, originally belonged to the State and were of the character commonly referred to as public land. These lands had been conveyed by the State in one instance by an inchoate title and in the other by an invalid title to an agency of the State for mere purposes of administration and control in carrying out certain functions delegated by the State to the agency. The court in these cases concluded that those particular lands remained State lands. On the contrary, the property under consideration in the case at bar was acquired by purchase by the Beauregard Parish School Board with its own funds for the establishment of a local public school for the inhabitants of a district in the name of, under the control and supervision of the School Board as a separate independent governmental subdivision and corporate entity.
In affirming our decision, the Supreme Court reasoned that while a local school board may have some connection with one of the departments of the state government as defined in the Constitution, said school boards are not departments of the government. The court then referred to Sections 12 and 13 of Article IV of the Constitution (1921) which refer to the "State or any political corporation" or to the "State, or any parish or municipal corporation thereof" and compared these sections to Section 2 of Article IV, which simply refers to the "State" and stated:
115 So.2d 373, 379
"The question posed herein is sui generis, and we believe: `In Construing a Constitution, resort may be had to the well-recognized rule of construction contained in the maxim "expressio unius est exclusio alterius," and the expression of one thing in a Constitution may necessarily involve the exclusion of other things not expressed. * * *' 11 Am. Jur., Sec. 57, page 667, verbo, `Constitutional Law.' See, Garrison v. City of Shreveport, 179 La. 605, 154 So. 622; State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; Esso Standard Oil Co. v. Crescent River Port Pilots Ass'n, 235 La. 937, 106 So.2d 316; City of Shreveport v. Price, 142 La. 936, 77 So. 883. In this respect, the learned Judge of the Court of Appeal in the instant case made the following statement, with which we agree:
"`A comparison of the language of Sections 2, 12 and 13 of this Article IV of the Constitution in this particular leaves it crystal clear that where the framers intended that the restriction or limitation should apply to the State only as a separate entity from its political subdivision, the word State alone was used, but where the limitation or restriction was intended to apply to the State and to all political subdivisions thereof, the intent was so spelled out in terms of "the State, or any political corporation thereof." * * *'"
Further, the Supreme Court in Stokes said that it did nor find either the Tensas or Caddo cases apposite to the issue then presented and declared the above language quoted from each of these cases to be obiter dictum.
In King, plaintiff's action in jactition was converted to a petitory one. In a dispute over title the Levee District contended that Section 2 of Article IV, above, prevented its loss of minerals by prescription. The court, citing Stokes, above, stated:
"Constitutional provisions must be strictly construed and cannot be modified or amended by implication, and in the case of State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, it was specifically held that constitutional provisions are subject to the same rules of construction as statutes.
We are of the opinion that the application of Section 2, Article IV of the Constitution of 1921, must be limited strictly to property sold by the State *253 since its adoption, and that since absolute title to the property was in the Levee Board in 1911, including fee title to said land together with the mineral rights in, on and under the property in the instant suit, the Levee Board has lost the mineral rights to said property by prescription." 148 So.2d 138 at page 144
The concurring opinion in King by Judge Tate (now Justice) very appropriately notes that the property there involved was acquired by the Levee Board in 1911 and sold to plaintiff's ancestor in title years before the adoption of the 1921 Constitution. The author cautions against the scope of the reasoning of his colleagues and opined that the majority opinion "suggests that the constitutional prohibition only applies to property owned by the `state' and not to property owned by those agencies through which the State acts, being the `state agencies', such as levee boards." A smiliar view was expressed by Judge Tate in Rycade Oil Corporation v. Board of Commissioners, etc., 129 So.2d 302, 305 (3rd La.App., 1961), where, in his concurring opinion therein, he stated:
"I doubt that our Supreme Court in the Stokes case meant to depart from the rationale of the First Circuit opinion affirmed, La.App., 109 So.2d 506, which essentially rested on the holding that the constitutional prohibition against the `State' parting with its mineral interests did not refer to a local school board, since, within the ordinary and popular meaning of the term, the `State' did not refer to such purely local subdivisions. A levee board, to the contrary, is an arm of the executive branch of the State government, performing a function of government on the overall State level; and the settled construction of the constitutional provision has always been to consider such levee boards as subject to the prohibition against sale of Stateowned minerals, unless the conveyance took place before the effective date of the 1921 constitutional prohibition thereof. See, e. g., Lum Chow v. Board of Com'rs for Lafourche Basin Levee Dist., 203 La. 268, 13 So.2d 857; Schwing Lumber & Shingle Co., Inc. v. Board of Commissioners of Atchafalaya Basin Levee District, 200 La. 1049, 9 So.2d 409; Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273; Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701."
It should be noted that each of the above authorities, (including the citations therein contained) with the exception of Stokes itself, dealt with lands that were deeded to and sold by the various levee districts prior to the adoption of the 1921 Constitution. It is conceded by the parties to this action that the present case presents for the first time for appellate review the question of whether the prohibition contained in Section 2 of Article IV, above, applies to property sold by a levee district after 1921.
In viewing the Supreme Court's opinion in Stokes (115 So.2d 373, 379), we note that it adopted with approval that portion of our opinion in the same case (109 So.2d 506, 510, above) wherein we made a distinction between the "state" as a separate legal entity on the one hand and its political subdivisions on the other. It is for this reason that we do not see Stokes as requiring that title to the property in question must be in the "state" itself before the prohibition applies.
Accordingly, we hold that a levee district, which was created as an arm of the executive branch of government for the purpose of carrying out a governmental function, i. e., flood control, is the "state" within the intent of Section 2, Article IV of the Constitution of 1921. This conclusion, we believe, accords with the holding in Stokes, and the expressions found in Grace and Lum Chow, above, albeit obiter dictia. Nor, do we find that this view conflicts with the Supreme *254 Court's decision in Caddo, above, because in that case the levee district had divested itself of the minerals in 1910 long before the Constitution of 1921.
Lastly, appellants urge that in the event we find that the constitutional prohibition is applicable to the levee district that they have acquired the mineral rights to the subject property by acquisitive prescription of ten years. C.C. Arts. 3474 and 3478, et seq.
With respect to this contention we must hold that the subject Constitutional prohibition against the alienation of minerals by the state equally prohibits the acquisition of these minerals by others by the running of prescription against the state. Notwithstanding the fact that the Legislature has on numerous occasions provided for the running of prescription against the state, these statutes can not be construed to include mineral rights for neither the Legislature not the courts can permit what the Constitution itself prohibits.
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
ELLIS, J., dissents with written reasons.
ELLIS, Judge (dissenting):
In my opinion, Stokes v. Harrison, 238 La. 343, 115 So.2d 373 (1959), which is the last expression of the Supreme Court on the subject, clearly holds that Article IV, § 2 of the Constitution of 1921 does not apply to state boards and agencies. It is the only appellate level case dealing with a property transfer subsequent to the adoption of the Constitution of 1921. I believe it to be controlling of the issues in this case and that the majority opinion is incorrect.
I therefore dissent.