362 So.2d 734 (1978)
DYNAMIC EXPLORATION, INC., et al.
v.
J. Burton LeBLANC et al.
No. 62379.
Supreme Court of Louisiana.
July 3, 1978.
Dissenting Opinion September 12, 1978.
David M. Ellison, Jr., Baton Rouge, for defendants-applicants.
Thomas J. Kliebert, Patterson, Michael K. Heltz, Baton Rouge, for plaintiffs-respondents.
PER CURIAM.
Writ granted. The court of appeal decision is affirmed, for reasons similar to these set forth in Shell Oil Company v. Board of Commissioners of Pontchartrain Levee District, 336 So.2d 248 (La.App. 1st Cir. 1976), certiorari denied, 338 So.2d 1156 (La.1976).
La.Const. of 1921, Art. 4, Section 2, provided "In all cases the mineral right on any and all property sold by the State shall be reserved * * *."[1] Decisions of this court, have consistently held that, for purposes of this article, levee districts were a state agency, performing a state function and administering state lands; they were therefore subject to this constitutional provision prohibiting alienation after 1921 of mineral rights owned by the state.[2] Accordingly *735 this constitutional prohibition of any alienation of mineral rights by the state after 1921, Lewis v. State, 244 La. 1039, 156 So.2d 431 (1963), likewise bars after 1921 divestiture through acquisitive prescription of a levee district's mineral interest in (state) lands owned by and administered by it. Shell Oil Co. v. Board of Com'rs. of Pontchartrain Dist., 336 So.2d 248 (La.App. 1st Cir. 1976), cert. denied, 338 So.2d 1156 (La.1976) ("No error of law."), Noted, 37 La.L.Rev. 317-18 (1977).[3]
Accordingly, we affirm the decisions of the previous courts, at the cost of the defendants-appellants-relators.
AFFIRMED.
SUMMERS, J., dissents and assigns reasons.
DIXON, J., does not agree with the explanation of Stokes v. Harrison but otherwise subscribes to the opinion.
SUMMERS, Justice (dissenting).
The instant concursus suit is a controversy between private landowners, J. Burton LeBlanc and Jesse LeBlanc, and the Pontchartrain Levee District over the ownership of mineral royalties and mineral rights underlying a tract of land containing approximately 325 acres in East Baton Rouge Parish.
The State of Louisiana acquired the property from the United States of America under the "Swampland Act" in December 1854. By Act 95 of 1890 the Louisiana Legislature created the Pontchartrain Levee District and pursuant to that Act the property in question was transferred to the Pontchartrain Levee District by the State of Louisiana on January 20, 1898. The Board of Commissioners of the District was organized as a "body politic or political corporation invested with all the powers inherent in such corporations" with authority "to sue and be sued." Authority was also delegated by the Act "to buy and sell property". With respect to the lands transferred by the State and involved here, the Board of Commissioners was granted "authority to mortgage and sell such lands, and otherwise dispose of them, in such manner as it may provide, in order to raise funds."
No reservation of mineral interest was contained in the transfer of these lands from the State to the District, nor was any *736 limitation imposed upon the District in selling these lands.
Acting pursuant to the provisions of Act 215 of 1908 the District caused these lands to be sold by the sheriff to the last and highest bidder, at which time J. Burton LeBlanc and Jesse E. LeBlanc were the successful bidders. By the terms of Act 215 of 1908 at the time of the sale the Sheriff was required to furnish a provisional deed to the last and highest bidder, who, upon surrender of said deed to the President of the Levee Board, was entitled to a patent signed by the President of the Levee Board and the Governor. This record indicates that such a patent was issued on February 15, 1929. This record is silent concerning whether the provisional deed was issued before or after the adoption of the Constitution of 1921. Since the title to the property vested in the LeBLancs at the time of the Sheriff's sale, that date is significant. The issuance of the patent in such cases is purely a ministerial act. La.Rev.Stat. 41:10; La Terre Co. v. Billiot's Shell Island, 103 F.2d 53 (5th Cir. 1939); Douglas v. State, 208 La. 650, 23 So.2d 279 (1945).
No reservation of minerals was contained in these documents transferring title to the lands to the LeBlancs.
Notwithstanding that no reservation of mineral interest was contained in the transfers of the lands to the LeBlancs, the Levee District contends that Section 2 of Article IV of the Constitution of 1921 prohibited alienation of minerals by the Levee District. The Constitution of 1921 provides that "in all cases the mineral rights of any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes."
In 1959 this Court in Stokes v. Harrison, 238 La. 343, 115 So.2d 373, observed that the word "State" as used in Section 2 of Article IV of the Constitution of 1921 appears alone in that provision; whereas, elsewhere in that same Article, dealing with other subjects, Section 12 refers to the "State, or any of its political corporations", and Section 13 refers to the "State, or to any parish or municipal corporation thereof." From these obvious differences, the Court concluded that the framers of the Constitution intended that the mandatory reservation of minerals in sales of lands applied only where the sale was by the State proper, holding that the constitutional requirement that minerals be reserved was inapplicable where lands were sold by "political corporations." In that case a 1926 sale of land by a school board was held to convey mineral rights in the absence of a reservation in the deed. Therefore, Section 2 of Article IV of the Constitution was held to be inapplicable to sales by school boards.
In Stokes v. Harrison this Court was of the opinion that to apply Section 2 of Article IV of the Constitution to political corporations or subdivisions of the State would have the effect of extending or amending the Constitution beyond its plain meaning, which the Court would not do.
In my view the decision in Stokes v. Harrison squarely decided the issue before this court and that case is controlling here. No other decision by this Court on this issue has changed that holding. The per curiam decision of the majority in the case at bar overruling the unanimous decision in Stokes v. Harrison, ex parte, without a hearing, in a matter of such statewide importance, does little service to the law. It is certain that it adds no stability to land titles. No application for rehearing has been filed here and hopefully this decision will not prove authoritative. I would uphold Stokes v. Harrison and apply that holding to the case at bar.
NOTES
[1] Our earlier constitutions provided no such prohibition against alienation of state minerals. The 1974 constitution continues this prohibition and adds confirming levee district jurisprudence (cited below) and overruling a school board decision (Stokes v. Harrison, 238 La. 343, 115 So.2d 373 (1959)) that "mineral interests of the state, of a school board, or of a levee district shall not be lost by prescription." It also prohibits loss by prescription of the "lands" of such agencies, the chief transferees of large quantities of state lands.
[2] See, e. g., State ex rel. Board of Com'rs, etc. v. Grace, 161 La. 1039, 1044, 109 So. 830, 832: "The district is a state agency, created and continued in existence by the state with the foregoing [state function] in view. The state, should it transfer the land to the district, including the mineral rights, in accordance with the grant made by it, would not be parting with the property within the meaning of the constitutional section cited, but would only be placing it under the control of one of its agencies. . . . The land would, to all practical intents and purposes, still be the property of the state."

We recognized the invalidity of any post1921 alienation of mineral rights by a levee board, in a series of decisions which permitted the alienation or loss of the levee district rights only because we held that the mineral rights were effectively alienated before 1921. Lum Chow v. Board of Com'rs, etc., 203 La. 268, 13 So.2d 857 (1943); Schwing Lumber & Shingle Co., Inc. v. Board of Com'rs, etc., 200 La. 1049, 9 So.2d 409 (1942); Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273 (1941); Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701 (1939).
See also: Yiannopoulos, 37 La.L.Rev. 317-18 (1977); Hardy, 24 La.L.Rev. 228-29 (1964); Note, 24 La.L.Rev. 416 (1964).
Decisions such as Board of Com'rs, etc. v. Hardtner, 164 La. 632, 114 So. 494 (1927); State v. Standard Oil Co., 164 La. 334, 113 So. 867 (1927), and Ellerbe v. Grace, 162 La. 846, 111 So. 185 (1927) held that, because of the grant of the land to the levee district with the power of alienation, the levee district was empowered to convey the land or grant mineral leases and receive mineral royalties rather than some other officer or agency of the state. The court's holdings are summarized by the conclusion of the opinion in Hardtner, 164 La. 651, 114 So. 500: "* * * so long as these grants remain unrepealed by an act of the Legislature, the lands in the levee district and belonging to the state [Italics in the opinion], with all of the mineral rights and timber on such lands, remain subject to acceptance and sale or other disposition by the boards of commissioners of the levee districts, respectively, and are not subject to any other disposition by the register of the state land office . . . under the general land laws of the state." The Hardtner decision recognized that the sale by the levee board after 1921 of such state lands nevertheless, by virtue of La.Const. Art. 4, Section 2, (1921), reserved the mineral rights. 164 La. 640, 114 So. 494.
[3] This decision correctly distinguished Stokes v. Harrison, 238 La. 343, 115 So.2d 373 (1959), as inapplicable to the loss of mineral rights after 1921 by a state agency, performing a state function, as to state lands administered by it and in its name. Despite some broad language in the decision, Stokes concerned only the effect of the constitutional provision upon private land purchased by a local school board in the ordinary course of commerce and soon thereafter reconveyed to a private owner. See 24 La.L.Rev. 421 (1964). The effect of this decision was only to hold that La.Const. Art. 4, Section 2, did not apply to lands acquired by a local subdivision in the ordinary course of commerce from a private purchaser for a non-state purpose, when those non-state lands were placed back into private ownership without having been used for a state purpose.