997 So.2d 891 (2008)
STATE of Louisiana in the Interest of C.T., JR.
No. 43,707-JAC.
Court of Appeal of Louisiana, Second Circuit.
November 19, 2008.
*892 Julie M. Lafargue, Shreveport, Reginald W. Abrams, for Appellants, Caddo Parish School Board, Wanda Gunn, Diane Atkins and Margaret Brown.
Michael W. Powell, Lisa Ryder, Shreveport, for Appellee, State of Louisiana.
John W. Evans, Jr., Bossier City, H. Clay Walker, Clark G. Garret, Kristen B. Bernard, Shreveport, for Appellee, C.T., Jr.
D.T., Appellee, In Proper Person.
C.T., SR., Appellee, In Proper Person.
Before WILLIAMS, CARAWAY and MOORE, JJ.
WILLIAMS, J.
The Caddo Parish School Board and its employees, Wanda Gunn, Diane Atkins and Margaret Brown,[1] seek review of a dispositional judgment of the Caddo Parish Juvenile Court, ordering them to "determine an educational placement" for a minor child, C.T., Jr. For the reasons set forth herein, we reverse the trial court's ruling.

FACTS
C.T., Sr. and D.T. have filed numerous Families in Need of Services ("FINS") complaints with regard to their minor son, C.T., Jr. On December 5, 2006, C.T., Sr. filed a FINS complaint in Caddo Parish juvenile court, making the following allegations:
[C.T., Jr.] has [run] away from home ... 10 times or more. [E]very time he gets in trouble at school, he runs away. He fights all the time; disrespectful to mother, father, grandfather or anyone; refuses to abide by school policies....[[2]]
On December 12, 2006, D.T. filed a FINS complaint, asserting:

*893 [C.T., Jr.] thinks he is [as] grown as any adult; constantly suspended for behavior and disrespect for authority; runs away from home when he cannot have his way.
C.T., Jr. was temporarily taken into state custody and placed in the Johnny Gray Jones shelter for youth. A hearing was held on December 15, 2006, and the juvenile court found that probable cause existed for a FINS adjudication as ungovernable. On December 28, 2006, C.T., Jr. ran away from home and D.T. completed another FINS complaint, stating, "Child is ungovernable and runs away. He also receives poor grades in school." On January 5, 2007, a conference was held and C.T., Jr. and his parents entered into an "Informal Family Service Plan Agreement" in which C.T., Jr. agreed to: (1) obey all local, state and federal laws; (2) attend school regularly and refrain from being truant, suspended or expelled; (3) obey all reasonable and lawful demands of his parents; and (4) have all of his chores completed before his parents got home from work. However, on January 17, 2007, C.T., Jr. was expelled from J.S. Clark Middle School for habitually violating rules, profanity and fifth suspension. Pursuant to school board policy, he was placed at Oak Terrace Alternative School.
On February 1, 2007,[3] C.T., Sr. filed a parental request for petition with the Caddo Parish district attorney's office, asserting that C.T., Jr. was "ungovernable" and a "runaway."[4] On March 5, 2007, the state filed a petition in Caddo Parish juvenile court alleging that C.T., Jr. "is a runaway and is disrespectful to parents and school officials and he habitually disobeys the lawful demands of his parent(s) and is ungovernable and beyond their control, in violation of LSA-Ch.C. art. 730(2)...." The state requested that the family "be adjudicated a Family in Need of Services and that the Court render such judgments and orders as the Court may deem just, proper or necessary for the care and supervision and rehabilitation and welfare of said child and family for the safety and protection of the public." Following a conference held on March 12, 2007, C.T., Jr. was released to the custody of his parents.[5]
On June 20, 2007, the juvenile court found that C.T., Jr. was ungovernable, pursuant to LSA-Ch.C. art. 730(2), and committed him to the custody of the Office of Youth Development for a period of two years. The court suspended the commitment and placed C.T., Jr. on supervised probation for a period of two years with specified provisions. The child was placed in the custody of his parents.[6]
*894 On October 24, 2007, C.T., Jr. was expelled from the Oak Terrace Alternative School for the remainder of the 2007-2008 school year for misconduct including disruption, damaging school property, disobedience and threatening staff. On January 16, 2008, C.T., Jr. was again remanded to the Johnny Gray Jones Youth Shelter because of his conduct at home and because he continued to run away.
Thereafter, a juvenile court probation officer filed a motion for modification of disposition with regard to C.T., Jr. The pleading included a prayer for "a Judgment modifying the Judgment of Disposition, and recommendations for treatment and placement should be provided for [C.T., Jr.] by the Louisiana Department of Social Services ["DSS"] Office of Community Services, by the Louisiana Department of Health and Hospitals ["DHH"] Office of Mental Health ["OMH"], and by the Louisiana Office of Youth Development." At a hearing held on February 25, 2008, a mental health commitment was recommended and C.T., Jr. was remanded to the Bossier Detention Center. The hearing resumed on February 28, 2008, after which the court concluded that C.T., Jr. "has a serious mental illness that substantially affects his ability to function and has a substantial effect on the way he deals with situations." Disposition was modified and C.T., Jr. was placed in the custody of DHH/OMH with authority for inpatient treatment. The court further ordered, "child is not to be released from DHH custody without authorization by this Court; DHH may release to outpatient treatment when it deems appropriate." On March 24, 2008, the court authorized C.T., Jr.'s release from the hospital, but continued him in DHH custody.
Subsequently, a motion was filed to transfer custody of C.T., Jr. from DHH to his parents. A review conference was scheduled for April 15, 2008, and school board employees, Margaret Brown and Diane Atkins, were ordered to appear.[7] During the hearing, the juvenile court heard the testimony of Kevin Alderman, a juvenile court probation officer.[8] Alderman stated:
Your honor ... last time we were in court, you addressed the situation of school. And I do have Ms. Adkins [sic] and Ms. Brown present in the courtroom today. After further checking, there *895 were three expulsion appeal meetings scheduled by the school board.... The first two were cancelled by Mr. [C.T., Sr.], and I think the third was a no-show. So [C.T., Jr.] has been out of school now since October the 24th 2007. And the school board has indicated to me that that's what the meetings were for is to come up with a school option.
Alderman also stated that C.T., Jr. was spending his days under the supervision of the staff at Family Services Unlimited.
C.T., Sr. also testified at the hearing. He admitted that he had cancelled the expulsion hearings, stating that the hearings conflicted with the child's mental health appointments or hearings/court conferences. When at least one of the hearings was scheduled, C.T., Jr. had been remanded to the youth shelter. C.T., Sr. stated that he had made several unsuccessful attempts to reschedule an expulsion hearing, including making telephone calls and writing a letter to the school board.
At the conclusion of the testimony, the juvenile court stated:
Ms. Atkins and Ms. Brown  any other representative from the school board present? Stand, please. The court orders that this child be admitted to the Caddo Parish school system within the week. Counsel for the child, if the child is not admitted to the Caddo Parish school system within the week, I order you to file a motion for contempt against the superintendent for Caddo Parish system and these two individuals....[[9]] This court will enforce the child's right to a free, appropriate public education.... [C.T., Sr.], stand, please. You are ordered by the Court that [by] noon tomorrow, you contact and speak with Ms. Brown at her place of employment and contact the Caddo Parish school system to make yourself available at any time for a meeting with them as they deem necessary to get your child enrolled in school. If you fail to do so and that's reported to me under sworn testimony, I will hold you in contempt of court, put you in jail for six months.... The time to get this child in school has long since passed and the Court will not tolerate any other delays in this matter. This child is being used as a ping-pong.
The court also transferred custody of C.T., Jr. to his parents and ordered him to "cooperate with his parents and obey the other conditions of probation that he's well aware of." However, in the written judgment, signed April 17, 2008, the court ordered the following:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED Caddo Parish Schools should determine an educational placement for said child no later than April 18, 2008, which addresses his right to a free and appropriate education. Wanda Gunn, Diane Atkins and Margaret Brown are each charged with the duty to carry out this Order.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said child's parent, [C.T., Sr.] should contact Ms. Margaret Brown no later than noon on April 16, 2008 in order to make himself available to enroll his child in the Caddo Parish School system.
On April 30, 2008, the Caddo Parish School Board, Gunn, Atkins and Brown *896 (collectively "school board") filed a supervisory writ of review with this court. Noting that the applicants were nonparties to the juvenile court's action, this court granted the writ application "solely for purposes of remand for perfection of an appeal." State, in the Interest of C.T., Jr., 43,631 (La.App.2d Cir.5/15/08) (unpublished). This appeal followed.

DISCUSSION
The school board contends the juvenile court lacked the authority to order it and its employees to readmit C.T., Jr. into school. The school board argues that the Louisiana legislature has provided for student discipline in public schools and decisions regarding those issues may only be appealed to the district court. The school board also argues that C.T., Jr. was adjudicated a delinquent and, pursuant to LSA-Ch.C. arts. 897 and 899, a child who has been adjudicated of certain delinquent acts may be required to attend school only if the school agrees to admit the child.
FINS cases are governed by LSA-Ch.C. art. 726 et seq.[10] LSA-Ch.C. art. 729 provides:
A court exercising juvenile jurisdiction shall have exclusive original jurisdiction, in conformity with any special rules prescribed by law, over any child, his caretaker, or any other member of the child's family, who is alleged to be in need of services, as well as over any employee of a public institution or agency having legal responsibility and ability to supply the needed services.
LSA-Ch.C. art. 779 provides, in pertinent part:
* * *
C. In any case in which the family has been adjudicated to be in need of services, the court may order any public institution or agency and its representatives to:
(1) Provide any services specified in its order as necessary to improve the family relationships or reunite the family in the best interests of the child, provided only that such services are available within the agency or institution.
(2) Report at least once every six months in writing concerning the progress of the family in receiving and accepting the services ordered.
School boards are agencies of the state. Rousselle Plaquemines Parish School Bd., 93-1916 (La.2/28/94), 633 So.2d 1235; Stokes Harrison, 238 La. 343, 115 So.2d 373 (1959); Shaw v. Caddo Parish School Bd., 347 So.2d 39 (La.App. 2d Cir.), writ denied, 350 So.2d 676 (La.1977). The task of educating the children of Louisiana rests with the individual school boards throughout the state. See, Drouin v. Board of Directors of Public Schools of Parish of Avoyelles, 136 La. 393, 67 So. *897 191 (1915); Ebey Avoyelles Parish School Bd., 2003-765 (La.App. 3d Cir.12/17/03), 861 So.2d 910, writ denied, XXXX-XXXX (La.3/26/04), 871 So.2d 349.
Contrary to the school board's assertions, it is clear from the record that the instant proceedings commenced as a FINS action and has remained a FINS action. Although the word "delinquent" appears in the judgment, the judgment specifically stated that C.T., Jr. was being adjudicated ungovernable "pursuant to LSA-Ch.C. art. 730.2," which is contained within the FINS provisions set forth in Title VII of the Louisiana Children's Code. There is no indication in the record that C.T., Jr. was ever prosecuted as a delinquent under the delinquency articles contained in Title VIII of the Children's Code.[11]
In State ex rel. C.O.'C., 99-1018 (La.App. 5th Cir.4/12/00), 769 So.2d 583, the court explained the difference between a FINS proceeding and a delinquency proceeding, stating:
A delinquency proceeding and a FINS proceeding are two very distinct proceedings from which different consequences result. In a delinquency proceeding, a juvenile can be adjudicated guilty of a crime and sentenced accordingly.... In a FINS proceeding, however, the juvenile's family comes under the exclusive jurisdiction of the juvenile court to remedy the problems which cause the child to be self-destructive. The court has the authority to establish a family service plan which is binding on all family members and all appropriate service providers. The family service plan requires the family members to participate in a plan of services which are intended to remedy the family's dysfunction which is causing the juvenile to need court supervision.
Id., at 586 (internal citations omitted).
In the instant case, the juvenile court had jurisdiction over the school board employees, pursuant to LSA-Ch.C. art. 729, because they were employees of "a public institution or agency having legal responsibility and ability to supply the needed services." As stated above, LSA-Ch.C. art. 779 provides that a juvenile court may order "any public institution or agency and its representatives to ... [p]rovide any services specified in its order as necessary to improve the family relationships or reunite the family in the best interests of the child...." Therefore, pursuant to the provisions of the Children's Code,[12] the juvenile court, in a FINS action, may utilize public institutions and agencies, including the school board, to maintain and rehabilitate a child and his or her family.
Nevertheless, the school board is correct in its contention that it was deprived of its right to due process, guaranteed by the 14th Amendment to the United States Constitution and Art. I, Section 2 of the Louisiana State Constitution, because *898 it was never joined as a party to these proceedings.
The joinder of parties needed for a just adjudication of all issues presented is addressed in LSA-C.C.P. art. 641, which provides:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest,
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
The failure to join an indispensable party may be noticed by an appellate court on its own motion. LSA-C.C.P. arts. 645, 927. An indispensable party is a person whose interest in the subject matter of the action is so interrelated and will be so directly affected by the judgment, that a complete and equitable adjudication cannot be made unless that person is joined in the action. LSA-C.C.P. art. 641; Estate of Bradford v. Thomas, 29,807 (La. App.2d Cir.9/24/97), 700 So.2d 1030; State, Dept. of Social Services Office of Family Support v. Norris, 26,831 (La.App.2d Cir. 12/7/94), 648 So.2d 9.
In the instant action, the school board and its employees were neither named as parties nor served with any of the FINS petitions filed in this matter. See, LSA-Ch.C. art. 751. Brown and Atkins were merely served with the "Motion to Upset IDD Court Review and Order for Service" and ordered to appear at the hearing at issue. Despite the fact that the school board employees were aware of these proceedings, because their interests, as well as those of the school board, were directly affected by the judgment, we find that they were indispensable parties who should have been joined in this action. Therefore, the judgment against them is reversed.

CONCLUSION
For the foregoing reasons, we reverse the juvenile court's judgment rendered against the Caddo Parish School Board and its employees, Wanda Gunn, Diane Atkins and Margaret Brown.
REVERSED.
NOTES
[1] At the time of the juvenile court's ruling, Gunn was the interim superintendent of the Caddo Parish School District; Atkins was the Director of Welfare and Attendance for Caddo Parish Public Schools; Brown was an administrator at the Oak Terrace Alternative School.
[2] LSA-Ch.C. art. 730 provides, in pertinent part:

Allegations that a family is in need of services must assert one or more of the following grounds:
(1) That the child is truant or has willfully and repeatedly violated lawful school rules.
(2) That a child is ungovernable.
(3) That a child is a runaway.
* * *
"Ungovernable" means the child's habitual disregard of the lawful and reasonable demands of his caretakers and that the child is beyond their control. LSA-Ch.C. art. 728(5). A caretaker, other adult family member, any representative of an agency having the responsibility or ability to supply services to a family, or any other person authorized by the court may file a complaint which alleges one or more of the grounds enumerated in Article 730. LSA-Ch.C. art. 731(A).
[3] A report completed by a member of the FINS office staff dated January 31, 2007, indicated that C.T., Jr. arrived at the FINS office unaccompanied by an adult. The child informed the FINS staff that he needed assistance and stated that he refused to stay home "because of unfair treatment." The report noted that C.T., Jr. had left home walking in the rain without a jacket, wearing slippers on his feet. The report also stated that the child had walked downtown and an unknown adult gave him a ride to the FINS office. Following a conference, C.T., Jr. was again placed in state custody at the youth shelter.
[4] LSA-Ch.C. art. 746 provides:

If there are reasonable grounds to believe that the family is in need of services, a family in need of services proceeding shall be commenced by a petition filed by the district attorney or any other attorney authorized by the court.
[5] C.T., Jr. and his parents appeared for a conference on April 10, 2007. The child admitted to the facts asserted and a FINS adjudication was made. The juvenile court ordered a probation study and the matter was set for June 20, 2007.
[6] On August 30, 2007, Carlos Tate, a probation officer of the Caddo Parish juvenile court, filed an affidavit attesting that C.T., Jr. had run away from home in violation of his probation. Tate also attested that the child's whereabouts were unknown. A conference was held on August 31, 2007. The juvenile court held C.T., Jr. in contempt of court and remanded him to the detention center for fifteen days, pursuant to LSA-Ch.C. art. 791(A) which provides:

If there are reasonable grounds to believe that the child has violated the terms of a judgment of disposition, the child may be taken into custody in accordance with Article 735 or 736.
[7] The record indicates that Brown and Atkins were served with the "Motion to Upset IDD Court Review and Order for Service" and ordered to appear at the hearing. The notice, prepared by Kevin Alderman, and served upon the school board employees, provided:

This officer requests the above child's IDD review on April 1, 2008 be cancelled and rescheduled for April 15, 2008. This request is due to the fact that Caddo Parish Schools are on Spring break. The school officials would not receive their subpoenas until March 31, 2008. This is not adequate time to prepare their recommendations for the court.
Additionally, Alderman's testimony indicated that the purpose of the expulsion meetings scheduled by the school board was "to come up with a school option."
[8] In the hearing transcript, Alderman is referred to as "Halderman." However, in the remainder of the record, his name is written "Alderman."
[9] The Public Defender's Office argues in brief that the juvenile court erred in ordering it to file a motion for contempt against the school board and its employees. However, the public defender's office did not object to the court's order and neither appealed nor answered in this court. Therefore, its argument will not be reviewed by this court. See, Uniform Rules, Courts of Appeal, Rule 1-3.
[10] LSA-Ch.C. art. 726 provides:

The purpose of [Title VII. Families in Need of Services] is to define self-destructive behaviors by the child and conduct by other family members which contribute to the child's harm and which warrant court intervention in the family's life so that appropriate services to remedy the family's dysfunction can be secured; to secure the effectiveness of the court's intervention by explicitly confirming its duty to obtain the cooperation and coordination of all public institutions or agencies having responsibility to supply services to any member of the family referred to the court; to establish a family service plan binding upon all family members and the appropriate service providers; and to protect the integrity of the family by authorizing adjudication and the imposition of a dispositional judgment requiring participation in a plan of services only after all available voluntary alternatives have been exhausted.
[11] LSA-Ch.C. art. 804, an article contained within the delinquency provisions, provides, in pertinent part:

* * *
(3) "Delinquent act" means an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state, or of another state if the act occurred in another state, or under federal law, except traffic violations. It includes a direct contempt of court committed by a child.
(4) "Delinquent child" means a child who has committed a delinquent act.
* * *
In this case, C.T., Jr. was not adjudicated guilty of any crime. Nor was there any allegation that C.T., Jr. had committed any "delinquent act."
[12] See also LSA-Ch.C. art. 729, supra.